IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: | |
| ADVENTURE ENTERTAINMENT, INCORPORATED d/b/a Movie Starz Video DVD Outlet d/b/a Movie Starz Video d/b/a Movie Starz | Case No. 10-72517 <br><br> Chapter 11 |
| Debtor. | |

**AFFIDAVIT OF MARK E. TOZIER, PRESIDENT AND CHIEF EXECUTIVE OFFICER OF ADVENTURE ENTERTAINMENT, INCORPORATED, IN SUPPORT OF FIRST DAY MOTIONS AND APPLICATIONS**

COMMONWEALTH OF VIRGINIA    )
                                                        )
CITY OF ROANOKE                          )

Mark E. Tozier, being duly sworn, deposes and states:

1. I am the president and chief executive officer of Adventure Entertainment, Incorporated, the above-captioned debtor and debtor-in-possession (the "Debtor"), a corporation organized under the laws of the Commonwealth of Virginia. In this capacity I am generally familiar with the Debtor's day-to-day operations, business, financial affairs, and the books and records of the Debtor.

2. The Debtor is a video rental store company. Its business includes the rental and sale of movies and video games at retail stores located in shopping centers.

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor retained possession of its property and is authorized thereby, as a debtor-in-possession, to continue the operation and management of its business.



MAGEE GOLDSTEIN
LASKY & SAYERS pc
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

4.  No request to appoint a trustee or examiner has been made in this case, and no statutory committees have been appointed or designated.

5.  In order to minimize the adverse effects of the commencement of this chapter 11 case on the Debtor's business, the Debtor has requested various types of relief in its "first day" motions and applications (each a "First Day Motion"). The First Day Motions seek relief intended to allow the Debtor to effectively transition into chapter 11 and minimize disruption of the Debtor's business operations, thereby preserving and maximizing the value of the Debtor's estate. I am familiar with the contents of each First Day Motion, including exhibits, and I believe that the relief sought in each First Day Motion is necessary to enable the Debtor to operate in chapter 11 with minimal disruption or loss of productivity and value, constitutes a critical element to achieving a successful reorganization of the Debtor, and best serves the interests of the Debtor's estate and creditors.

6.  Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents and information supplied to me by employees and advisors of the Debtor. I am authorized to submit this affidavit on behalf of the Debtor, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

**Background of Debtor**

7.  I founded the Debtor with my son, M. Travis Tozier, in 1994 in Roanoke, Virginia. Through a series of new store openings, the company expanded to a peak of 40 stores. The company has since reduced its number of store locations to 28 as of the Petition Date, with 22 locations in southwest Virginia, three locations in West Virginia, and three locations in Tennessee.

MAGEE GOLDSTEIN
LASKY & SAYERS, PC
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

2

8. Several factors outside of the Debtor's control have made the Debtor's core business increasingly competitive. First, movies and video games are increasingly available legally and illegally through sources on the World Wide Web. Examples of these competitors are Netflix and Apple. Second, competing companies have the ability to deliver media via the mail, without a requirement for a physical storefront. Examples of these competitors are Netflix and Blockbuster. Third, competing companies have begun to offer a small number of popular rentals through a vending machine-type system. Examples of these competitors are Redbox and Blockbuster. Each of these three competing media delivery systems requires significantly less overhead, undercutting the prices of a storefront video and game rental location. Finally, the cost of newly released media has decreased significantly, making it more affordable for many consumers to purchase a new release from a large retailer, such as Wal-Mart, rather than rent.

9. A significant number of consumers, however, desire the selection, immediate delivery, and customer service available at a physical rental location. Accordingly, the Debtor intends to restructure its business to close underperforming store locations and increase profitability at the remaining locations.

10. Because of the Debtor's inability outside of bankruptcy to efficiently shed unprofitable store locations with an unexpired lease, the Debtor has been unable to sufficiently decrease its expenses to correspond with the decreasing revenue. In 2008 the Debtor had revenue of approximately $8.9 million, with a loss of approximately $215,000. In 2009, the Debtor had revenue of approximately $7.6 million, with a loss of approximately $308,000. The revenue in 2010 is expected to be approximately $6.8 million or less, and, outside of bankruptcy, the Debtor anticipates that it would be unable to decrease its expenses significantly below that incurred in 2009.

MAGEE GOLDSTEIN
LASKY & SAYERS pc
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

3

11. Historically, the Debtor obtained its media through two sources: (1) the Debtor acquired media by paying a lump sum up front, much as any individual would purchase a movie from a store; and (2) the Debtor acquired media for a lower up-front payment coupled with an agreement to share with content producers and percentage of the revenue from rentals and sales of media for six months to a year. The Debtor does not intend to continue to acquire media through revenue sharing agreements.

12. I am the Debtor's primary secured lender. I am owed approximately $613,409.06 by the Debtor, evidenced by two promissory notes that I purchased from the Debtor's original lender, SunTrust Bank. Payment of the promissory note is secured by a blanket lien on the Debtor's assets.

### First Day Motions

**A. Emergency Motion for Entry of an Order Authorizing Continued Use of Cash Management System and Retention and Use of Certain Existing Bank Accounts and Business Forms**

13. The Debtor has 28 store locations. Each store location has associated with it a deposit account at a local FDIC insured bank (the "Satellite Accounts"). The accounts are used for deposit of store receipts, which funds are then transferred to a central account for the Debtor (the "Central Accounts"), from which the Debtor pays its expenses.

14. The Debtor intends to close its current Central Accounts and open debtor-in-possession Central Accounts. However, if the Debtor is required to close all of the Satellite Accounts and open new debtor-in-possession accounts to replace each of the Satellite Accounts, the disruption to the Debtor's business would significantly adversely affect the bankruptcy estate.

15. The Debtor proposes to open debtor-in-possession operating and payroll accounts to replace its Central Accounts, and retain its existing Satellite Accounts. All funds in the

MAGEE GOLDSTEIN
LASKY & SAYERS, PC
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

4

Satellite Accounts will regularly be transferred to the debtor-in-possession accounts via check or wire transfer. The Satellite Accounts are FDIC insured, are used only for deposits, and no payments or withdrawals are made from the Satellite Accounts except to regularly sweep the funds into the Central Accounts, accordingly, the relief requested in the Motion subjects the Debtor's estate to minimal risk.

**B. Emergency Motion for Entry of an Order Authorizing: (i) Payment of Prepetition Wages, Salaries, and Other Compensation, and Costs and Expenses Incident Thereto; and (ii) Banks and Other Financial Institutions to Honor All Checks for Prepetition Compensation and Deductions**

16. As of the Petition Date, the Debtor has approximately 142 salaried and hourly employees ("Employees"). All of the current salaried and hourly Employees are owed or has accrued various sums for wages, salaries, contractual compensation, and other accrued compensation ("Prepetition Compensation"). In the ordinary course of business, the Debtor makes withholding payments from its Employees' paychecks on account of various federal, state and local income, FICA, FUTA, and other taxes (the "Deductions").

17. The Debtor needs to continue to operate to maximize the recovery for its creditors. The Debtor avers that its Employees will not continue to work for it while it reorganizes or liquidates its business if they are not paid their Prepetition Compensation.

18. The Debtor proposes that it be authorized to pay the Prepetition Compensation of its Employees and all related Deductions.

**C. Emergency Motion for Entry of an Order (i) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Service, (ii) Deeming Utilities Adequately Assured of Future Performance, and (iii) Establishing Procedures for Determining Adequate Assurance of Payment**

19. The Debtor has relationships with many utility companies (each a "Utility Provider" and, collectively, the "Utility Providers") for the provision of telephone, gas, electricity, trash removal, and related services (the "Utility Services") to its 28 store locations.

MAGEE GOLDSTEIN
LASKY & SAYERS pc
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

20. The Bankruptcy Code anticipates that a debtor will negotiate adequate protection of payment of the Utility Providers individually with each Utility Provider. The Debtor is current with the Utility Providers and, therefore, the Utility Providers are inherently adequately assured of payment by the Debtor for their services. It would be cumbersome, expensive, and would provide no benefit to the bankruptcy estate to require the Debtor to negotiate with all of its Utility Providers.

21. The Debtor proposes the establishment of a procedure that will allow a Utility Provider to request additional adequate assurance of payment for its post-petition services.

**D. Emergency Motion for Entry of an Order Authorizing the Debtor to (i) Conduct Store Closing Sales in Accordance with Approved Procedures, (ii) Pay Limited Liquidation and Closure Performance Bonuses, and (iii) Abandon Certain *de minimus* Assets in Connection with Store Closing Sales**

1. The Debtor leases space for its corporate office and 28 store locations. The Debtor is in the process of identifying unprofitable and burdensome locations that should be closed. The Debtor may close as few as four or as many as 22 of its stores. Store numbers 630 and 675 are in the process of store closing sales. Subject to the approval of this Motion, the Debtor intends to continue its current store closing sales and promptly commence store closing sales at store numbers 637 and 673. The Debtor will continue to evaluate its operating stores and will make decisions on whether to close other stores on a continuing basis.

2. To ensure that the store closing sales proceed in an orderly and efficient manner, the Debtor seeks approval of certain store closing procedures. The Debtor submits that the Store Closing Procedures are necessary to permit the Debtor to conduct the store closing sales in an orderly and efficient manner without undue interruption, and so as to allow the bankruptcy estate to optimize recoveries on account of closing such store locations.

MAGEE GOLDSTEIN
LASKY & SAYERS, PC
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

22. Finally, so that the Debtor can retain sufficient personnel to conduct the store closing sales, the Debtor also requests the authority, in its sole discretion, to pay limited liquidation and closure performance bonuses to various store-level employees to incentivize them to continue to work during store closing sales.

### E. Emergency Motion for Entry of an Order Authorizing (i) Rejection of Unexpired Leases and Executory Contracts, (ii) Expedited Procedures for Rejecting Unexpired Leases and Executory Contracts, and (iii) Abandonment of Personal Property

23. To complete the process of shedding underperforming stores, the Debtor has decided, in its business judgment to reject the leases and contracts associated with those stores that have been or will be shut down.  Because the Debtor has many leases, many of which could be rejected at different times during the Debtor's case, it would be unnecessarily burdensome to require the Debtor to file a motion each time it chooses to reject or assume a lease.

24. Accordingly, the Debtor seeks the Debtor seeks the establishment of streamlined procedures to reject certain nonresidential real property leases to which the Debtor is a party and which are associated with each store that has been or will be shut down.

*[Signature page follows]*

MAGEE GOLDSTEIN
LASKY & SAYERS, PC
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

Respectfully submitted,

MARK E. TOZIER

By: _____

The foregoing instrument was acknowledged before me this 21st day of October, 2010, by Mark E. Tozier, president of Adventure entertainment, Incorporated.

_____
Notary Public

My commission expires: Jan 31, 2012

Notary Registration No. 7211986



GARREN ROBERT LAYMON
Notary Public
Commonwealth of Virginia
Reg. #7211986
My Commission Exps. Jan. 31, 2012

U:\A CLIENTS\Movie Starz Video 1364\First Day Motions\Tozier Affidavit.doc

MAGEE GOLDSTEIN
LASKY & SAYERS P.C.
ATTORNEYS

P.O. Box 404
Roanoke, Virginia 24003-0404
540.343.9800

ATTORNEYS AND COUNSELORS AT LAW

*Signature Page*